IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| MELVIN WEST, | * |
|    Plaintiff, | * |
| v. | *   Case No.: 8:17-cv-01884-PWG |
| SAFEWAY, INC. | * |
| AND | * |
| COLLINGTON SERVICES, LLC. | * |
| AND | * |
| IBT LOCAL NO. 639 DRIVERS, | * |
|    Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Melvin West ("Mr. West") filed this lawsuit against his former employer, Safeway, Inc. ("Safeway"),[1] and his former union, Local 639 of the International Brotherhood of Teamsters

---

[1] Collington Services, LLC., was named as a defendant because Safeway overtook warehouse operations from Collington prior to Mr. West's employment and as a result, Mr. West alleged that he was employed by "Safeway, Inc. and/or Collington Services, LLC." Am. Compl. 1; see Def.'s Mot. for Summ. J. ("Union's Mem.") 6 n.3, ECF No. 52-1. However, "Safeway denies that Collington Services, LLC was a party to the collective bargaining agreement that governed the terms and conditions of Plaintiff's employment," and requested that Collington be dismissed from this action with prejudice. Safeway's Answer ¶¶ 10-11 n.1, ECF No. 30. Mr. West did not present any facts that Collington was a party to the agreement and did not oppose this request in his opposition. Therefore, this request is granted based on the undisputed fact that Collington was not Mr. West's employer, and Collington is dismissed as a defendant in this action. *United States v. 152 Char-Nor Manor Boulevard, Chestertown*, 114 F.3d 1178, 1997 WL 311527 at *2 (4th Cir. 1997) (unpublished table decision) (affirming the district court's grant of summary judgment when the district court relied only on undisputed facts in making its ruling).

("Union"), pursuant to Section 301 of the of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185.  Am. Compl. 1, ECF No. 23.  Mr. West sued Safeway for wrongful discharge and breach of contract and he sued the Union for breach of its duty of fair representation.  *Id.* Safeway and the Union filed separate motions for summary judgment arguing, amongst other things, that Mr. West did not exhaust the contractual grievance procedures set out in the collective bargaining agreement before filing suit.  Def.'s Mot. for Summ. J. ("Safeway's Mem.") 1, ECF No. 53-1; Union's Mem. 15.  They argue that because he cannot show either that the Union prevented him from exhausting those procedures, or that filing a grievance would have been futile, his suit cannot go forward as a matter of law.  *Id.*  For the reasons that follow, I will grant both motions for summary judgment.

## FACTUAL BACKGROUND

The undisputed facts are as follows.[2]  Mr. West worked for Safeway as a transportation driver, transporting goods to and from different store locations.  West Dep. 9-10, ECF No. 53-2.  In January 2017, Safeway terminated Mr. West for making unauthorized stops on his routes.  Termination Notice 2, ECF No. 53-5.  Mr. West told his union steward, Roland Davis, that he wanted to file a grievance, so William "Bill" Davis (no relation to Roland Davis), the Union's business agent, filed a grievance on behalf of Mr. West.  West Dep. 10-11; William Davis Dep. 12, ECF No. 53-7.  After weeks of discussions, Bill Davis and Safeway negotiated a Last Chance Agreement ("LCA") under which the Union and Mr. West would withdraw the grievance and Safeway would allow Mr. West to come back to work under specified conditions.  Last Chance Agreement ("LCA"), ECF No. 53-9.  Mr. West signed the LCA on March 10, 2017.  *Id.*

---

[2] In his opposition to Safeway and the Union's motions for summary judgment, Mr. West identifies many facts that he contends are disputed.  For purposes of this Memorandum, the facts that I identify as "undisputed" are those that are acknowledged by all the parties.

On March 23, 2017, Mr. West texted Bill Davis that "I want to withdraw." Text Messages with Bill Davis 2, ECF No. 53-10. Bill Davis replied, asking if Mr. West wanted "to withdraw from the last chance agreement to return to work is that correct[?]" *Id.* Mr. West confirmed. *Id.* On April 5, 2017, Mr. West attended the Union's board meeting during which he asked to withdraw from the LCA and asked to reinstate his grievance. West Dep. 116-17. The board denied his request to reinstate the grievance. Letter from Union 2, ECF No. 12. This was the last contact that Mr. West had with the Union. West Aff. 4, ECF No. 53-19 ("I have had no communication with the union since the arbitration meeting [of April 5, 2017].").

On April 7, 2017 Lucy Madert, Safeway's human resources manager, sent a letter to Mr. West warning him that his job was at risk because he had neither reported to work nor contacted Safeway since signing the LCA. Madert Warning Letter, ECF No. 53-13. Ms. Madert wrote the following:

> Unless you submit documentation to the human resources office supporting your absence from March 10th forward no later than 5:00p.m. on April 14, 2017, we will assume you are no longer interested in continuing your employment with Safeway and your employment will end.

*Id.* Mr. West wrote two letters in reply. First, on April 11, 2017, he wrote Dana Lowe (Safeway's leave administrator) that he had not reported for work because he could not get onto Safeway's property without an identification card (which had been taken from him when he was terminated in January, 2017), and that he asked Roland Davis and David Apkarian (West's supervisor) for an identification card, but neither responded. First West Letter, ECF No 53-14. The next day, April 12, 2017, Mr. West wrote both Ms. Lowe and Ms. Madert stating that his absence from work was because he did not have an identification card and he explained that he had tried, but failed, to procure one. Second West Letter, ECF No. 53-15. On April 18, 2017, Ms. Madert replied to Mr. West in a letter explaining that because his letter failed to adequately explain his absence; because

3

he had alternative ways of getting an ID card; and because he did not provide documentation explaining his absence, his employment with Safeway was terminated. Madert Termination Letter, ECF No. 53-16. On April 20, Mr. West wrote back to Ms. Madert, explaining that he was unaware of the other ways he could have gotten an ID card. Third West Letter, ECF No. 53-17. That was the last contact between Mr. West and Safeway. Mr. West did not file a grievance or ask Roland Davis or William Davis to file a grievance on his behalf.[3] William Davis Dep. 58-59.

The relevant disputed fact is as follows. Mr. West argues that he sent William Davis a copy of the letter he wrote to Ms. Madert on April 20, 2017. Pl.'s Opp'n 6. William Davis testified that received a copy of this letter not from Mr. West, but from Safeway. William Davis Dep. 37-38. However, because I have determined that Mr. West's April 20, 2017 letter to Ms. Madert was not, as a matter of law, the invocation of the grievance process, whether William Davis received a copy of it from Mr. West or from Safeway is immaterial.

---

[3] Mr. West disputes the fact that he did not file a grievance concerning his second termination because, he argues, the letter he wrote on April 20, 2017 should be treated as a personal grievance. Pl.'s Opp'n 7, 16, ECF No. 54. However, the issue of whether a communication amounts to a grievance is one of law, not fact. *Wright v. Safeway*, 804 F. Supp. 752, 755 (D. Md. 1992) (holding that, as a matter of law, an employee's statement to his union representative that "I feel like I shouldn't have to lose my job for making an honest mistake," was not an attempt to invoke the grievance procedure). I find that the *Wright* case is instructive as to whether Mr. West's April 20, 2017 letter constitutes a grievance. While he responded to the grounds for termination Ms. Madert stated in her letter by expressing his confusion regarding her reference to his not having provided medical records justifying his absence from work, nowhere does he ever state that he intended the letter to be a grievance. Third West Letter. Moreover, although the letter he wrote purports to have been copied to William Davis, the Union's Business Agent, and West's attorney, Mr. Crump, it did not request that the Union take action on his behalf, or request any remedial action by Safeway. Under these circumstances, I find that, as a matter of law, the letter does not amount to an attempt to invoke the grievance procedure outlined in the collective bargaining agreement.

Mr. West filed this lawsuit against Safeway for breaching the collective bargaining agreement and the LCA because Safeway did not provide him with an ID badge, and for wrongful termination because Safeway terminated Mr. West's employment after he failed to report for work without adequate explanation. Am Compl. 7-9. Mr. West also filed suit against his Union for breach of its duty of fair representation when it failed to provide access to the worksite and failed to protect his rights under both the collective bargaining agreement and the LCA. *Id.* at 5-7. Both Safeway and the Union have moved this Court to grant them summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure because Mr. West did not exhaust the grievance procedures in the collective bargaining agreement before bringing suit. Safeway's Mem. 1; Union's Mem. 15. The parties have fully briefed their arguments. *See* ECF Nos. 52, 53-1, 54, 55, 56. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). Because there is no genuine dispute of material fact relevant to the dispositive issue in this case; because Mr. West failed to exhaust the grievance procedures as required by Section 301; and because Mr. West has not shown that an exception to the exhaustion requirement applies, both motions for summary judgment are granted in favor of Safeway and the Union.[4]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat

---

[4] Because I find that the failure to exhaust issue is dispositive, it is not necessary for me to address the alternative arguments raised by the Defendants.

a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

## DISCUSSION

Section 301 of the Labor Management Relations Act ("LMRA" or "Act") allows litigants to bring "[s]uits for violation of contracts between an employer and a labor organization" in federal district court. 29 U.S.C. § 185. In a hybrid § 301 action, (which the parties agree this case presents), employees sue their union for breach of its duty of fair representation and sue their employer for breach of the collective bargaining agreement. In a hybrid action, the two claims rise or fall together. *Vaca v. Sipes*, 386 U.S. 171, 186 (1967) (the claim for breach of duty of fair representation is "part and parcel of [the] § 301 [claim]").

As a general rule, "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). The reasoning for this rule is simple, to sue an employer for breach of contract, the employee must himself follow the terms of that contract.

> [I]f the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled

6

> that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement.

*Vaca*, 386 U.S. at 184. To exhaust their contractual remedies, employees must file a grievance. *Groves v. Commc'n Workers of Am.*, 815 F.3d 177, 178 (4th Cir. 2016). But the Supreme Court has held that there are exceptions to the exhaustion requirement. If the employee cannot exhaust contractual obligations because they would be futile, his failure to exhaust is excusable. *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324 (1969) (holding that employees alleging racial discrimination on the part of the group responsible for filing grievances on the employees' behalf do not need to exhaust their contractual remedies). In addition, citing *National Post Office Mail Handlers v. United States Postal Service*, 594 F.2d 988, 991 (4th Cir. 1979), Mr. West argues that exhaustion is not necessary if misconduct by the union or employer would render exhaustion unnecessary. Pl.'s Opp'n 9.

Mr. West argues that he was not required to exhaust his contractual remedies, i.e. file a grievance, because two of these exceptions apply. Pl.'s Opp'n 8, 12. He further argues that if the two exceptions do not apply, he fulfilled the exhaustion requirement because his communication on April 20 to Ms. Madert explaining that he was unaware of the other ways he could have obtained an ID card should have been processed by the Union as a grievance.[5] Third West Letter; Pl.'s Opp'n 16. Because, as a matter of law, Mr. West's letter could not have been construed as a grievance, he has failed to exhaust his contractual remedies. Additionally, because he has failed to produce any evidence from which a reasonable trier of fact could conclude that either exhaustion exception applies, Safeway's and the Union's motions for summary judgment are granted.

## Mr. West has not produced any evidence from which a reasonable trier of fact could conclude he exhausted his contractual remedies

---

[5] I address these arguments in the opposite order below.

The collective bargaining agreement ("CBA") between Safeway and the Union prescribes a mandatory grievance process that employees must follow. Collective Bargaining Agreement Article 8, Section 2, ECF No. 53-18. The CBA requires that, to initiate the grievance process, an employee must submit a written grievance to a Safeway manager or supervisor, and the shop steward and business agent of the Union. *Id.* Here, Mr. West argues that: "[h]is April 20, 2017 letter responding to [Ms.] Madert's termination letter was a grievance in and of itself. The Union's failure to treat it as such . . . is irrational." Pl.'s Opp'n 16. Mr. West is incorrect.

*Wright v. Safeway, Inc.* is instructive here. 804 F. Supp. 752. In *Wright*, this Court granted a motion for summary judgment in favor of the employer because the employee did not exhaust his contractual remedies before coming to court. Wright argued that although he did not formally file a grievance in accordance with the procedure outlined in the collective bargaining agreement, his communications with two union representatives "were sufficient to indicate to the union that he wanted it to file a grievance on his behalf." *Id.* at 755. Specifically, Wright argued that his statements to the union representatives that "I feel like I shouldn't have to lose my job for making an honest mistake," after resigning when his employer caught him attempting to steal photographs, should have put the union on notice that he intended to invoke the grievance procedures. *Id.* This Court however, disagreed, and held that because Wright "never asked either [union representative] to file a grievance, never inquired whether or not he could file a grievance, and never even mentioned the word 'grievance,'" he failed to exhaust his contractual remedies. *Id.* at 756. The same is true for Mr. West.

Mr. West argues that his response letter to Ms. Madert, a Safeway employee, outlining the difficulties he experienced when attempting to get an identification badge, should have been treated by the Union as a grievance. Pl.'s Opp. 16. This argument fails for the same reasons that

8

Wright's argument failed—Mr. West never asked his Union to file a grievance, never inquired if he could file a grievance, and never even mentioned the word grievance. Third West Letter. Therefore, as a matter of law, Mr. West did not exhaust his contractual remedies.

### Mr. West has not produced any evidence from which a reasonable trier of fact could conclude that he failed to exhaust his contractual remedies *because* his Union prevented him from so doing

In *Vaca*, the Supreme Court held that an employee is not required to fulfill the exhaustion prerequisite if "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." 386 U.S. at 185. The Fourth Circuit has held that to qualify for this exception, "there must be some causal nexus between a union's breach of its duty of fair representation and an employee's failure to exhaust contractual remedies." *Groves*, 815 F.3d at 182. To rise to the level of breach in this case, the Union's actions (by failing to invoke grievance procedures) must have been "so indifferent to the rights of [Mr. West] or so grossly deficient in [its] conduct purporting to protect the rights of [Mr. West] that the conduct could be equated with arbitrary action." *Walker v. Consolidated Freightways, Inc.*, 930 F.2d 376, 382 (4th Cir. 1991) (quoting *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891 (4th Cir. 1980)).

In *Groves*, the Fourth Circuit held that the plaintiffs did not qualify for the exhaustion exception because they failed to allege that the union *caused* their failure to file a grievance. 815 F.3d at 182-83. There, the plaintiffs were terminated for failing to meet sales goals and declined to inform the union of their terminations. *Id.* at 179. The union failed to contact the plaintiffs when it learned that the reports leading to their terminations were "flawed." *Id.* at 180. The union learned of the information in the reports from the employer, after the 45-day deadline for filing

9

grievances had already passed. *Id.* at 179-80. Therefore, the Fourth Circuit held that the union's failure to inform plaintiffs of the circumstances leading to their termination did not cause the plaintiffs' failure to exhaust their contractual remedies, and thus their failure was not excused under *Vaca*. *Id.* at 183-84.

Mr. West argues that the Union caused his failure to file a grievance because it failed to act after becoming aware of his complaints to Safeway. Pl.'s Opp'n 15. But Mr. West admitted in a sworn, confidential witness affidavit, that he attached to his NLRB complaint against the Union, that he stopped all communication with the Union on April 5, thirteen days *before* his second termination, on April 18. Mr. West Aff. 4 ("I have had no communication with the union since the arbitration meeting [of April 5, 2017]"). Nevertheless, Mr. West argues that the Union "arbitrarily and capriciously failed to act" when it received his April 20 letter from Safeway. Pl.'s Opp'n 14. But, as the Union explains, in order for its conduct to be deemed arbitrary, it must be "'so far outside a range of reasonableness as to be irrational.'" Union's Reply 2, ECF No. 56 (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Given the undisputed fact that Mr. West made clear to his Union representatives and the Union's executive board that he wanted to withdraw from the LCA, (which the Union had negotiated on his behalf following his first termination) despite the entreaty by the Union that he not do so, the Union's decision not to take action on his behalf because it concluded he had decided not to continue his employment with Safeway is not "so far outside the range of reasonableness as to be arbitrary." Text Messages with Bill Davis 2 ("I want to withdraw"); West Aff. 3 ("I requested to withdraw[] the last chance agreement"). Nor has he demonstrated that the Union's conduct was discriminatory, in bad faith, or prevented him from filing a grievance. Thus, he is not excused from his obligation to exhaust in accordance with the CBA, which requires that a grievance be submitted in writing to the union

steward and business agent. Collective Bargaining Agreement Article 8, Section 2. Mr. West is not arguing that the Union breached its duty of fair representation in negotiating the CBA, and he is therefore bound by its terms. *Groves*, 815 F.3d at 182 (holding that when the plaintiffs argued the Union failed to make them aware of the faulty circumstances surrounding their terminations until after the deadline to file grievances in the collective bargaining agreement had passed, they were in actuality arguing over the terms of the collective bargaining agreement).

### Mr. West has not produced any evidence from which a reasonable trier of fact could conclude that filing a grievance would have been futile

In *Glover*, the Supreme Court recognized a futility exception to the exhaustion requirement. 393 U.S. 324. The Court held that in narrow circumstances, "where the effort to proceed formally with the contractual or administrative remedies would be wholly futile," plaintiffs do not need to pursue contractual remedies that would "only serve to prolong the deprivation of [their] rights." *Id.* at 330-31; *see also Nat'l Post Office Mail Handlers*, 594 F.2d at 991 (holding that when contractual remedies are "unsatisfactory or unworkable by reason of misconduct of the employer or of the union, exhaustion of those (i.e., contract) remedies is unnecessary"). Mr. West argues that filing a grievance would have been futile because after learning of his difficulty getting an identification badge from the April 20 letter, the Union failed to investigate and failed to file a grievance on his behalf. Pl.'s Opp'n 10-11. I disagree.

In *Glover*, the plaintiffs alleged that their employer and their union were conspiring to prevent black workers from getting promotions. 393 U.S. at 325. The Court held that because the plaintiffs would have had to file a grievance with their union—one of the parties responsible for the discrimination—to exhaust their contractual remedies, exhaustion was futile. *Id.* at 331. Mr. West makes no such allegations, nor does he put forth any evidence from which a reasonable trier of fact could conclude that it would have been futile to file a grievance. Mr. West does not suggest

11

that the Union and Safeway were acting in concert to keep him from working. *Mabane v. Metal Master Food Serv. Equip. Co.*, 541 F. Supp. 981, 990 (D. Md. 1979) (granting summary judgment in favor of the employer and rejecting the plaintiff's futility when plaintiff failed to allege circumstances restricting access to the grievance process). In fact, Mr. West himself concedes that after filing a grievance concerning his first termination, the Union assisted him in negotiating the LCA, allowing him an opportunity to return to work. Pl.'s Opp'n 13.

Because Mr. West failed to exhaust his grievance procedures before bringing suit without excuse, his claims against both Safeway and the Union fail. *Power v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 87 F. Supp. 2d 545, 552 (E.D.Va. 2000) ("an employee's claims against the employer and union 'are interlocked: neither claim is viable if the other fails'") (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997)).

## CONCLUSION

Mr. West has not presented any evidence from which a reasonable fact finder could conclude that he exhausted the grievance process, or that he failed to do so but because it would have been futile or because the Union prevented him from doing so. Therefore, defendants Safeway and the Union are entitled to judgment as a matter of law and I grant their motions for summary judgment.

## ORDER

Accordingly, on this twenty sixth day of May, the Union's Motion for Summary Judgment, ECF No. 52, IS GRANTED, with prejudice. Additionally, the Safeway's Motion for Summary Judgment, ECF No. 53, also IS GRANTED.

/S/
Paul W. Grimm
United States District Judge